# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN INTERNATIONAL RELOCATION SOLUTIONS, LLC, d/b/a Aires, and AMERICAN INTERNATIONAL FORWARDING, INC. | ) ) ) ) ) ) 2:17-cv-01564 |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| ANDREW POWERS and TRC GLOBAL MOBILITY, INC., | ) ) ) ) |
| Defendants. | ) |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Plaintiffs American International Relocation Solutions, LLC, and American Forwarding, Inc. (collectively, "Aires") seek dismissal of their seven-count Complaint (Compl., ECF No. 1) against Defendants Andrew Powers and TRC Global Mobility, Inc. ("TRC") pursuant to Federal Rule of Civil Procedure 41(a)(2). (Pls.' Mot. to Voluntarily Dismiss, ECF No. 88.) According to Aires's Motion to Voluntarily Dismiss:

> "After review of the discovery conducted to date and their continuing internal investigation, Aires has determined to voluntarily dismiss certain claims with prejudice (i.e., Counts One, Three, Four, Five, Six, and Seven of the Complaint), and to voluntarily dismiss the remaining claim without prejudice (i.e., Count Two of the Complaint), so that all claims asserted against TRC are dismissed with prejudice, and only a claim against Powers for breach of contract remains, which Aires will pursue in state court."

(*Id.* ¶ 12.) Defendants do not object to the dismissal of this action but argue that all counts should be dismissed with prejudice. (Defs.' Resp. to Pls.' Mot. to Voluntarily Dismiss, ECF No. 93.) Thus, the Motion to Voluntarily Dismiss will be granted in part to the extent that Counts I and III

1

through VII will be dismissed with prejudice. That leaves only Aires's breach of contract claim, Count II of the Complaint. In light of Aires's assertion that it intends to pursue this claim (but in state court) and Defendants' argument that moving this case to another forum would prolong a vexatious lawsuit, the Court will deny in part the Motion to Voluntarily Dismiss such that the Court will retain supplemental jurisdiction over Count II. If Aires intends to pursue Count II, it must do so here.

## I. BACKGROUND

Aires, Defendant Power's former employers, filed its Complaint on December 1, 2017, in this Court, alleging that Powers violated its Covenant Not to Compete Agreement ("CNC Agreement") when he began working for Aires's competitor, Defendant TRC. (Compl. ¶¶ 9, 25, 29, 33.) Three days after initiating this suit, Aires filed a Motion for Preliminary Injunction, a Motion to Expedite Discovery, and a Motion for Preservation of Information. (ECF Nos. 2, 3, 4.) The Court promptly Ordered briefing on those motions, ECF No. 8, including an Order for Aires to file more detailed documents to support its requests for relief under Federal Rule of Civil Procedure 65. (ECF No. 6.) The Court then Ordered the parties to file copies of the CNC Agreement and any other agreements relied upon for the pending motions, as those central documents had not been attached to any pleading, motion, or memorandum. (ECF No. 19.)

After an in-person status conference, the Court Ordered expedited discovery related to the Motion for Preliminary Injunction, with written discovery due February 16, 2018. (ECF No. 26.) The subsequent Initial Case Management Order set a general discovery deadline for July 3, 2018. (ECF No. 38.) The parties then filed a motion to extend the discovery deadline as it related to the Motion for Preliminary Injunction to April 6, 2018, which the Court granted. (ECF Nos. 40, 42.) At the March 19, 2018, telephone status conference with the Court, the parties made a joint oral

motion for an additional extension, and the Court directed the parties to file a proposed amended case management order, which never was filed. (*See* Tr. of Proceedings of March 19, 2018, ECF No. 53, at 33:11–19.)

According to joint status reports and communications to Chambers, the parties continued to engage in discovery and encountered various discovery disputes long after the Court-imposed discovery deadlines (both for the Motion for Preliminary Injunction and for the case as a whole) had passed. (ECF Nos. 56, 58, 62.)

For example, at the March 19, 2018, telephone status conference, Aires argued that Defendants were withholding responsive documents related to Powers' solicitation of prospective customers on behalf of TRC and failing to respond to requests related to a former employee of Aires who now works for TRC but not involved in the facts giving rise to this lawsuit. Defendants, on the other hand, argued that Aires's responses to Defendants' discovery requests with respect to trade secrets—in which Aires apparently responded that they had no reason to believe Power took *any* trade secrets with him—indicated that the trade secret claims in the case were essentially non-starters. (*See* Tr. of Proceedings of March 19, 2018, ECF No. 53.)

The Court held another telephone status conference on August 21, 2018, to address a discovery dispute regarding Aires's request for the deposition of TRC's chairman, Paul Haislmaier. Defendants objected on the basis that Mr. Haislmaier lacked knowledge of information pertinent to the case and on the basis that given Mr. Haislmaier's age, a deposition "would be an imposition." (*See* Tr. of Proceedings of August 21, 2018, ECF No. 69.)

Then, on September 13, 2018, the Court received a fax from counsel for Defendants indicating there was a dispute as to "the appropriateness of Plaintiff's response to Defendants' written requests for production of documents." (ECF No. 66, at 1.) Specifically, despite pleading

3

claims for violations of numerous trade secret laws, Aires had (still) not yet identified or produced any evidence that Powers or TRC possessed or disclosed Aires's confidential and/or proprietary information. (*Id.* at 1–2.) After the Court scheduled an in-person status conference, the parties requested that the Court continue the conference to a later date, which the Court did, and the parties never followed-up with the Court on this issue. (ECF Nos. 67, 68.) Therefore, the Court took no action on this dispute at that time. (ECF No. 70.)

On November 27, 2018, at a telephone status conference scheduled by the Court, Defendants informed the Court, again, that Aires has failed to provide information to support their claims that Powers "took or could have taken" proprietary information with him from Aires to TRC. (Tr. of Proceedings of November 27, 2018, ECF No. 81, at 3:8–4:6.) At that point, counsel for Defendants and the Court engaged in the following:

> **Counsel for Defendants**: The problem is I think we need to know if there is something. They keep telling us they don't have anything at this time but it has been a year since this case has been filed and we still don't have anything.
>
> **THE COURT**: Aren't you in love with that answer? If somebody sues your client saying he stole all this stuff and you say, okay, tell me what he stole and the answer is we don't know, don't you love that answer?
>
> **Counsel for Defendants**: I do, Your Honor, you're correct, as long as they are making this representation to the Court today because what we are worried about is maybe them finding something on the eve of the hearing.

(*Id.* at 9:13–10:1.) The Court Ordered Aires to formally respond to the relevant requests within the following two weeks. (ECF No. 73.)

A joint status report dated January 3, 2019, indicated that the parties continued "to complete the remaining discovery necessary for the hearing on the preliminary injunction," but

4

Defendants had yet to set dates for their depositions. (ECF No. 78, at 1.) Given that more than one year had lapsed since Aires filed their Complaint and Motion for Preliminary Injunction, the Court held a telephone status conference, in which it became clear that Aires was contemplating dropping a significant portion of the claims in their Complaint, including all claims related to trade secrets and proprietary information. (Tr. of Proceedings of January 15, 2018, ECF No. 85.) At which point, the Court placed the following on the record:

```
The Court: [A] motion for preliminary injunction tells the
Court that, Judge, you pretty much should put aside all your
civil stuff -- in fact, the statute says that -- and the case
where there's a preliminary injunction motion is to take
precedence over all similar matters on the Court's docket,
and I treat them that way. So, 14 months ago we came rocketing
out like a cruise missile and we are 14 months later and from
the Court's perspective, we have the world's second largest
nothing burger in terms of the litigation here.
```

(*Id.* at 17:4–14.) The Court then denied the Motion for Preliminary Injunction, which had been pending on the Court's docket for fourteen months, without prejudice to it being re-filed "once everyone figures out what this case is going to be about because it's pretty clear to the Court we don't know that now." (*Id.* at 18:10–12.)

On February 12, 2019, the parties filed another joint status report. (ECF No. 86.) It began by summarizing the discovery that has occurred in this case. Aires reported that it has concluded its depositions, but Defendants had not yet conducted their depositions. (*Id.* at 1–2.) The parties also indicated that two discovery disputes remain outstanding. Aires reported that it nitended to file a Rule 41(a)(2) motion and re-file several claims in state court. If this case was to be re-filed in state court, Defendants requested that the Court provide evidentiary rulings "to avoid duplicative work in the lower court and further damage to Defendants," (*Id.* at 3), and Aires requests that dismissal here be "subject to the condition that all discovery materials obtained in this action shall be freely usable in the state court action." (ECF No. 90, at 2.) Defendants further informed the

5

Court that they are "seeking an award of attorneys' fees spent in defending this matter." (*Id.*)

On February 28, 2019, Aires filed their pending Motion to Dismiss, Defendants responded, and Aires replied. (ECF Nos. 88, 90, 93, 94.)

## II. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, once the opposing party serves its answer, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." *Carroll v. E One Inc.*, 893 F.3d 139, 145 (3d Cir. 2018) (citing Fed. R. Civ. P. 41(a)(2)). "Rule 41 motions 'should be allowed unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit.'" *In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990) (quoting 5 J. Moore, *Federal Practice* ¶ 41.05[1], at 41–62 (1988)). "[T]he district court has discretionary power to order the dismissal." *Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir. 1974).

## III. DISCUSSION

As stated above, Defendants do not oppose dismissal of Counts I and III through VII with prejudice. Those claims are therefore dismissed with prejudice. Defendants also do not oppose dismissal of Count II, but they oppose Aires' request that Count II be dismissed *without* prejudice.

Despite citing different cases, the parties agree that a court exercising its discretion under Rule 41(a)(2) should consider the following non-exhaustive factors:

1. The extent of Defendants' effort and expense in preparing for trial;
2. Plaintiffs' lack of diligence in pursuing the action;
3. An insufficient explanation by Plaintiffs of the need to take a dismissal;
4. Whether Defendants have filed a motion for summary judgment or other dispositive motion; and
5. The excessive and duplicative expense of defending a second action.

"The Court may also consider 'whether the dismissal is designed to evade federal jurisdiction and frustrate the removal statute's purpose.'" *Zamias v. Fifth Third Bank*, No. 3:17-cv-153, 2018 U.S. Dist.

6

LEXIS 103803, at *6 (W.D. Pa. June 21, 2018). *See Lincoln Gen. Ins. Co. v. Kingsway Am. Agency, Inc.*, No. 1:11-cv-1195, 2013 U.S. Dist. LEXIS 7985, at *43 (M.D. Pa. Jan. 18, 2013) (granting motion for voluntary dismissal without prejudice filed fifteen months after complaint over defendants' objections that the statute of limitations would bar subsequent suit); *Thomas v. Amerada Hess Corp.*, 393 F. Supp. 58, 70 (M.D. Pa. 1975) (denying motion for voluntary dismissal without prejudice "filed after more than a year of extensive and costly pretrial discovery proceedings" and filed after motions for summary judgment); *Zamias*, 2018 U.S. Dist. LEXIS 103803, at *6–7 (denying motion for voluntary dismissal filed "nearly one year after filing their Complaint," filed after defendant filed a motion for judgment on the pleadings, filed after significant case progress and "extensive motions practice," and supported by unpersuasive justification for dismissal); *Barrett v. McDanel*, No. 06-cv-994, 2007 U.S. Dist. LEXIS 41972, at *8 (W.D. Pa. June 8, 2007) (denying motion for voluntary dismissal and dismissing case with prejudice based on considerable expense incurred by defendants due to "numerous discovery motions" related to plaintiff's "delinquent" discovery requests and the "late stage" of the proceeding in which defendants had prepared motions for summary judgment); *Costanza v. Citizens Fin. Grp., Inc.*, No. 10-cv-0320, 2011 U.S. Dist. LEXIS 121568, at *6 (W.D. Pa. Oct. 20, 2011) (granting motion for voluntary dismissal without prejudice where defendants failed to identify unique efforts or expenses incurred and only speculative duplicative expenses for a second litigation); *Shaw Grp., Inc. v. Picerne Inv. Corp.*, 235 F.R.D. 68, 70 (W.D. Pa. 2005) (denying motion for voluntary dismissal without prejudice because no explanation for dismissal without prejudice provided, motion not filed diligently but shortly before summary judgment deadline, and defendant incurred substantial legal expenses to defend this case for past three years).

The Court applies the factors identified above to this case.

*1. Defendants' Effort and Expense in Preparing for Trial*

First, with respect to the extent of Defendants' effort and expense in preparing for trial, the Court looks at both how long the case has been pending and how much activity has occurred during

7

that time. Here, the case had been pending for fourteen (14) months before Aires filed their Motion to Voluntarily Dismiss. This alone weighs in favor of a dismissal with prejudice, but the Court also looks at what has occurred in those fourteen months. *Compare Lincoln Gen. Ins. Co.*, 2013 U.S. Dist. LEXIS 7985, at *43 (granting motion for voluntary dismissal without prejudice filed fifteen months after complaint), *with Zamias*, 2018 U.S. Dist. LEXIS 103803, at *6–7 (denying motion for voluntary dismissal filed less than one year after the complaint). Here, Aires filed its Complaint alongside a Motion for Preliminary Injunction and a Motion to Expedite Discovery, two motions that fast-track a civil case and naturally incur more expense and effort by all parties in the very early phases of a case. Indeed, the Court Ordered responses by Defendants to Aires's motions within five (5) days of service upon Defendants. The Court then Ordered expedited discovery so that the Court could reach the merits of Aires's Motion for Preliminary Injunction in a timely fashion, as the law requires. *See Gardner v. Westinghouse Broad. Co.*, 559 F.2d 209, 212 (3d Cir. 1977) ("In the case of an application for an injunction, especially a preliminary injunction, the urgency of the matter is obvious. The request for an injunction goes to the merits of the case and delayed review may be the practical equivalent of no review.") To a large extent, the amount of effort and expense that Defendants have poured into the case is a direct result of Aires sounding the alarm of urgency through its early motions.

The Court has also weighed in on numerous discovery disputes. In reviewing the docket, the Court observes that this case has required more Court intervention and attention than a typical civil case at this stage in litigation.[1] Therefore, the first factor weighs heavily in favor of Defendants and dismissing Count II with prejudice.

---

[1] The Court does not make this observation for any purpose other than to surmise that if the parties necessitated more-than-usual court intervention, that is an indicator that the parties were likely putting forth more-than-usual efforts themselves. Furthermore, Court intervention is also costly and time consuming to the parties, as it involved letters to the Court and time preparing for conferences. (*See, e.g.*, ECF No. 66.)

8

*2. Plaintiffs' Diligence*

Aires argues that it acted diligently in reviewing the voluminous discovery that became available as late as October 2018, and Aires alerted Defendants on or around January 11, 2019, that they were reconsidering the viability of some of their claims. (ECF No. 78.) Of course, "some of their claims" turned out to be "all but one of their claims." Still, no motion for summary judgment or other dispositive motion is pending before the Court.[2]

On the other hand, Defendants argue that Aires filed this lawsuit based on "unfounded allegations" and the extensive discovery, now surpassing a year, has failed to turn up any evidence to support Aires's claims. (ECF No. 93, at 1.) The Court agrees with Defendants that the "nothing burger" in this case results from one year of discovery in which Aires was unable to provide any meaningful discovery related to its pled trade secrets claims, as evident in the November 27, 2018, telephone conference. Aires claims the decision to drop the trade secrets claims came after their review of recent discovery, but conferences with the Court dating back to March 2018 show that Defendants made repeated efforts to understand the factual underpinnings of Aires's trade secret claims, and only when Defendants placed the issue front and center before the Court and the Court then Ordered Aires to respond to Defendants' discovery requests on this issue (following the November 27, 2018 telephone conference) did Aires move to drop those claims. This, along with filing a preliminary injunction followed by a year of discovery (or lack thereof), can hardly be called diligent.

---

2 Although, given that Aires never pushed its injunction motion, and then announced that it was walking away from nearly all of its case, Defendants can hardly be faulted for not cranking up the expensive summary judgment process.

9

### 3. *Explanation of Need for Dismissal*

The third factor looks to Aires's explanation for the need to take a dismissal. Aires asserts that it intends to pursue Count II, but this Court, upon dismissal of all other claims, cannot take federal question subject-matter jurisdiction of Count II since Count II (breach of contract) is brought pursuant to state law. With respect to diversity jurisdiction, Aires asserts that the amount in controversy is below the threshold amount ($75,000 exclusive of costs and interest), so the Court has no diversity jurisdiction over Count II. Aires further argues that supplemental jurisdiction, does not apply here because "there are no considerations that would warrant this Court exercising supplemental jurisdiction." (ECF No. 90, at 8.) Defendants assert that Aires is "forum shopping" on the basis that "[t]his lawsuit was nothing more than a fishing expedition designed to harass and hamper the Defendants," and removing the claim to state court enables Aires to "avoid the consequences associated with filing such a frivolous lawsuit." (ECF No. 93, at 12.)

The Court disagrees with Aires that it is stripped of subject-matter jurisdiction of Count II upon the dismissal of all the remaining claims in the case. Prior to the dismissal of the federal claims, it is unquestionable that the Court had both federal question and supplemental subject-matter jurisdiction over the claims in the Complaint, as "federal courts have the power to hear a state claim if the federal claim has 'substance sufficient to confer subject matter jurisdiction on the court,' and the state and federal claims 'derive from a common nucleus of operative facts.'" *New Rock Asset Partners, L.P. v. Preferred Entity Advancements*, 101 F.3d 1492, 1505 (3d Cir. 1996) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). "Once a court has decided to exercise jurisdiction over the state claim, however, elimination of the federal claim does not deprive the court of the constitutional power to adjudicate the pendent claim." *Id.* (citing *Lentino v. Fringe Emp. Plans, Inc.*, 611 F.2d 474, 479 (3d Cir. 1979)). Rather, § 1367(c) provides the district court with the discretion on whether to keep jurisdiction:

(c) The district courts **may** decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
    (1) the claim raises a novel or complex issue of State law,
    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
    **(3) the district court has dismissed all claims over which it has original jurisdiction, or**
    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367 (emphasis added).

"That discretion, however, is not unbridled. Rather, the decision 'should be based on considerations of judicial economy, convenience and fairness to the litigants.'" *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (quoting *New Rock*, 101 F.3d at 1505); *see also Estate of Ware v. Hosp. of the Univ. of Pa.*, 871 F.3d 273, 286 (3d Cir. 2017) (affirming district court's retention of supplemental jurisdiction over state-law claims after permitting withdrawal of federal claims). Although Aires argues that these "considerations" do not support the Court retaining supplemental jurisdiction in this case, Aires fails to provide any analysis for that conclusion. To the contrary, in this case, the factors weigh heavily in favor of this Court retaining supplemental jurisdiction of the breach of contract claim.[3]

With respect to judicial economy, this case has already undergone over a year of discovery, with many discovery disputes along the way, and the parties indicate not all disputes have been resolved. Defendants even requested that should this case move to state court, they want this Court to resolve current discovery disputes. Rendering such decisions after dismissing all claims would be an impermissible advisory opinion, so the parties would have to relitigate any discovery disputes in state court anew. Aires requests that if this Court were to dismiss Count II without prejudice to it being refiled in state court, that such dismissal contain conditions on the usability of discovery conducted in

---

[3] Aires indicated in its brief that the factors could not support the Court retaining discretionary supplemental jurisdiction, but it did not conduct any analysis supporting this conclusion. Given the Court's conclusion that the factors, discussed above, weigh heavily in favor of the Court retaining jurisdiction, Aires's failure to conduct any analysis lends at least some support to Defendants' argument that Aires is forum shopping. Defendants chose not to respond to the supplemental jurisdiction argument in their response brief. Given that both parties were aware of the possible application of § 1367(c)(3) to this case, it is appropriate for the Court to conduct its own analysis herein.

11

this action. Again, such a request presents substantial comity issues, as this Court is not in a position to instruct a state court how to manage discovery in a civil case on its docket. Although Aires cites to a case in which this Court did place such a "condition" upon its dismissal, *Mercer v. Allegheny Ludlum Corp.*, 132 F.R.D. 38 (W.D. Pa. 1990), such a condition was imposed based on an "*agreement of counsel* whereby the parties agreed that discovery in the federal action could be used in the state action." *Mercer v. Allegheny Ludlum Corp.*, 135 F.R.D. 115, 116 (W.D. Pa. 1990) (emphasis added). The record in this case reveals no such understanding among the parties. To avoid further disputes about discovery, the most judicially economical option here is for the Court to retain jurisdiction of the last remaining claim in this case.

Furthermore, Defendants have informed the Court that they will seek attorneys' fees in this case in this Court, and their arguments are likely to center on their belief that this case was based on "defamatory and unfounded allegations." (ECF No. 93.) To the extent this case spills over into another forum, it will be more difficult for both the parties and the Court to assess the case, as the main rub is whether this case, as a whole, had any merit.

Both parties acknowledge the difficulty in addressing a motion for attorneys' fees if Count II is actively being litigated in a different forum. As Aires notes, "the fees and costs [Powers] incurred in this action were done in connection with work product that can be used in the state court action." (ECF No. 94, at 8.) Defendants argue that allowing a portion of this case to continue in a new forum enables Aires "to avoid the consequences associated with filing such a frivolous lawsuit, consequences that have a direct relationship to and will have a direct impact on the sole claim Aires wishes to proceed with." (ECF No. 93, at 12–13.) Therefore, common sense dictates that this case not be bifurcated between forums, as it is clear to the Court that if Count II were to be litigated in state court, Defendants' anticipated motion for attorneys' fees in this Court will necessitate a trial within a trial as to the merits

12

behind *all* claims in Aires's Complaint. The parties already began wading into those merit-based arguments in the briefings associated with this Motion to Voluntarily Dismiss.[4] (ECF Nos. 93, 94.)

To the extent that Aires asserts that it has a strong breach of contract claim, it may proceed in this Court. To the extent Defendants argue this case was brought without merit, they may proceed with that argument in this forum, as well. Judicial economy will be best served by keeping this case in this Court, where the parties can conclude any discovery remaining as to Count II here and now—quelling Defendants' concerns about litigating discovery disputes in a new court and new case and eradicating both parties' concerns about re-doing discovery. Furthermore, keeping the case here will allow for a more effective and efficient resolution of Aires's sole remaining claim and Defendants' anticipated motion for attorneys' fees.

Convenience is not a strong factor in this analysis, but with only one claim remaining in a case that began with seven claims, the Court does not anticipate remaining litigation to be overly time-consuming. The remaining claim only involves one Defendant (Powers), involves discrete questions of fact and law that the parties have already, largely, engaged in discovery on, and involves damages of less than $75,000. The convenience of concluding the case here rather than starting over from the beginning in state court weighs in favor of this Court retaining jurisdiction.

With respect to fairness to the litigants, this factor weighs heavily in favor of the Court retaining jurisdiction. Defendants' argument that Aires would be forum shopping if they were permitted to file in state court is moot if the case remains here. Similarly, Aires states that the only reason it intends to file this claim in state court is its belief that it cannot proceed here.[5] With that misunderstanding

---

[4] To be clear, neither party has proposed that the likelihood of success on the merits is a factor that the Court should consider in its disposition of a Motion to Voluntarily Dismiss.

[5] To the extent Defendants argue that filing a breach of contract case in state court is merely a tactic to prolong harassment towards TRC and Powers, retention of such jurisdiction ensures a timely resolution, one way or another, of that claim.

13

clarified, the fairness factor weighs in favor of the Court retaining jurisdiction and deciding the claim on its merits.

Because the Court exercises its discretion to retain jurisdiction of the breach of contract claim, Aires's reason for seeking dismissal without prejudice of the claim now rings hollow, but it also guts Defendants' prejudice argument that dismissal without prejudice enables forum shopping. The time has come for both parties to place their cards face-up on the table.

*4. Dispositive Motions*

As explained above, no motions for summary judgment have been filed nor have deadlines for such been set. Although this factor weighs in favor of dismissal without prejudice, it is counterbalanced by the reality that Plaintiff filed time-sensitive motions and then left its Motion for Preliminary Injunction pending on the docket for over a year, bogging down the parties in a multi-phase discovery.

*5. Excessive and Duplicative Expense of Defending a Second Action*

The Court has already addressed the reality that filing the breach of contract claim in state court will result in excessive and duplicative expenses for Defendants, especially with regard to discovery disputes. Therefore, this factor weighs in favor of Defendants.

*6. Conclusion*

Based on the analysis above, the Court will deny Aires's Motion to Voluntarily Dismiss to the extent it seeks dismissal without prejudice of Count II breach of contract claim. Given Aires's assertion to the Court that it intends to pursue this claim against Defendant Powers, it must do so in this Court, if at all. If Aires opts not to pursue this claim in this Court, the claim will be dismissed with prejudice.[6]

---

[6] The Court reiterates its sentiment at the January 15, 2019, telephone status conference that Aires has had more than enough time to figure out their case. The Court anticipates that the parties will litigate this last remaining claim in an expedient fashion.

14

## IV. CONCLUSION

For the foregoing reasons, Aires's Motion to Voluntarily Dismiss (ECF No. 88) is granted in part and denied in part. It is granted to the extent that Counts I, III, IV, V, VI, and VII will be dismissed with prejudice. It is denied in all other respects. The only remaining claim is Count II for breach of contract against Defendant Powers. As such, Defendant TRC is terminated from the case. An appropriate Order follows.

Mark R. Hornak
Chief United States District Judge

cc: All counsel of record

Date: April 9, 2019